UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES GLENDENING**, | : | |
| | : | Case No.   19-cv-01167-JMY |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **FAIR ACRES GERIATRIC CENTER**, | : | |
| | : | |
| *Defendant* | : | |

## MEMORANDUM

**YOUNGE, J.**                                                                                             **MAY 17, 2022**

In this age discrimination case, Plaintiff James Glendening alleges that he was forced to resign from a training program with Defendant Fair Acres Geriatric Center, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. Ann. § 951 *et seq*.  Now before the Court is Defendant's Motion for Summary Judgment (ECF No. 24).  The Court finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

   **I.**   **BACKGROUND**

Defendant is a non-profit skilled nursing facility operated by the County of Delaware. (ECF No. 1 ¶¶ 6-7; ECF No. 8 ¶¶ 6-7.)  In addition to its nursing facility, Defendant sponsors a free training program known as the Nursing Aide Competency and Evaluation which trains individuals to become certified nursing assistants ("CNA").   (ECF No. 24-1 at 1.). To be a CNA in Pennsylvania, an individual must complete a 120-hour training program approved by the

Pennsylvania Department of Education, like the program Defendant offered. (ECF No. 24-1 at 3-4.) Once the training program is completed, a person desiring to become a CNA must also then pass a Nurse Aide Competency Test which is federally regulated. (*Id.*) Both the training program and the Nurse Aide Competency Test must be completed within four months of full-time employment pursuant to federal regulations. (*Id.*)

At age seventy-five, Plaintiff applied for Defendant's CNA Training Program. (ECF No. 1 ¶¶ 10-11.) According to Defendant, their CNA Training program, which operates separately from Defendant's nursing facility, is simply a free program which trains individuals to be nursing assistants, and that entry into this program is no guarantee of employment with Defendant as set forth in their written policies. (ECF No. 24 at 5.). Plaintiff, in contrast, maintains that despite this written policy, the CNA training program operates much like an apprenticeship, with Defendant hiring nursing assistants through its CNA program whose employment is contingent on them receiving their certification. (ECF No. 26-1 at 14-15.) According to Plaintiff, once he was accepted into Defendant's training program, he was already offered employment and employed by Defendant subject to passing the Nurse Aide Competency Test within 120 days of him starting at Fair Acres Geriatric Center. (*Id.* at 20.) Plaintiff alleges that he was already employed because: (1) federal and state law requires that the nursing facility pay an applicant's testing, training, and other "reasonable and appropriate costs"; (2) the Pennsylvania Department of Education, according to Plaintiff's interpretation, considers those in CNA training programs as being hired; (3) he was required to pass several physical and background checks; (4) he signed a program contract and the Defendant's student guidelines; and (5) Defendant never told Plaintiff he need to submit a separate application to become a CNA at Fair Acres Geriatric Center after going through the training. (ECF No. 26 at 12.) Nonetheless,

Plaintiff acknowledges that he doesn't have the requisite requirements to be a CNA as he hasn't completed the requirements to be certified. (ECF No. 24 at 7-8.)

Plaintiff was accepted and attended Defendant's four-week training program for only one and half days, beginning January 29, 2019 and into January 30, 2019. (ECF No. 24-1 at 2-3.) On the second day of the program, Plaintiff alleges he took the Nurse Aide Competency Test which he alleges he passed, though there is nothing in the record indicating that he did beyond his own statement. (ECF No. 24-1 at 10.) Following administration of the test, Plaintiff met with the classroom instructor, nurse Jane DiCecco. (*Id.*) Plaintiff testified that during this meeting, nurse DiCecco "didn't even look at the test, even though I knew I passed it well. And she told me I was – I should go home and retire and take it easy and that I shouldn't be there. And that if I didn't resign, there's other ways to get rid of me. And if that happened, there would never be another way to get a job with the county, in case I wanted a job at the county." (*Id.*)

Nurse DiCecco, on the other hand, during an EEOC investigation of this matter, provided an account that differs from Plaintiff. Specifically, nurse DiCecco stated as follows:

> "During the test… [Plaintiff] appeared to have difficulty breathing. When he stood up he was off balance and had to hold onto the table to get up straight. When I reviewed the test results… he again appeared short of breadth and had difficulty standing. I asked him if he was alright. He stated that he gets SOB at times, I asked him if he knew what all that this position entails. He stated that he was not sure but knew it would mean feeding residents. I informed him of all that he would have to do as a CNA and asked him if he thought it would be too much for him. Mr. Glendening responded by stating 'Even my wife doesn't understand why I am doing this. I was just looking for something to do to keep busy.'… [A] short time later before the other students came back from break, he came to me and said that he was going to withdraw from the class and enjoy his retirement."

(*Id.* at 12.). Plaintiff testified that because of his meeting with nurse DiCecco he felt like he had no other option but to resign from Defendant's CNA Training Program. (ECF No. 24-3 at 8.) Following this meeting, Plaintiff signed a Student Exit Form dated January 30, 2019. (ECF 24-1 at 12.) Plaintiff maintains that "Defendant rejected [him] for employment as a CNA because of

3

Plaintiff's age" but at no time did Plaintiff file any grievance or complaint with Defendant although the forms he signed indicated the availability of such procedure. (ECF No. 1 at ¶ 24; ECF No. 24-1 at 10.) The Student Exit Form indicated that Plaintiff resigned from Defendant's training program because he "[d]ecided this program not for him" though Plaintiff testified that the Student Exit Form was blank when he signed it. (ECF No. 24-1 at 10; ECF 24-3 at 5.) Plaintiff has not completed any training program required to receive his CNA certification even though such coursework is offered through other entities, nor has he reapplied to Defendant's sponsored training program. (ECF No. 24-1 at 10-11.)

Based on these facts, Plaintiff filed this action against Defendant on March 19, 2019, asserting two claims for relief: (1) violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*; and (2) age discrimination in violation of the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. Ann. § 951 *et seq*. (ECF No 1 at 4-7.) Plaintiff requests: (1) declaratory and injunctive relief; (2) back pay, front pay, and liquidated damages; (3) attorneys' fees and costs of suit; and (4) such other relief as the Court deems necessary and appropriate. (*Id.*)

Defendant filed the instant Motion for Summary Judgement on June 1, 2020. In its Motion, Defendant argues that Plaintiff cannot establish an ADEA or PHRA violation because: 1) Plaintiff never completed any CNA training program and therefore, was not qualified for the position independent of his age; (2) he never applied for a position at Fair Acres Geriatric Center or anywhere else to be a CNA; (3) nurse DiCecco's statement according to Plaintiff's account does not rise to the level of direct evidence of discrimination; and (4) nurse DiCecco was not a decisionmaker for Defendant.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is *genuine* if the evidence presented is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)). Therefore, if after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III.    DISCUSSION

Plaintiff fails to meet many of the requirements needed to establish his claims, but the Court need not address each and every element Plaintiff has failed to satisfy, as critically, there is

5

no causation between the evidence Plaintiff cites and the failure to hire Plaintiff that would show discrimination. Specifically, the Court finds that summary judgment is appropriate on both Plaintiff's ADEA and PHRA claims because nurse DiCecco was not a decisionmaker for Defendant nor can any of her statements, even if ageist, be attributed to Defendant. Without this evidence, there is no causal link to any adverse employment decision, and consequently, no reasonable factfinder could conclude that Plaintiff suffered discrimination.

The ADEA and PHRA both provide a remedy for discrimination in private employment on the basis of age. *See* 29 U.S.C. § 623(a)(1); *see also* 43 Pa. Cons. Stat. Ann. § 951.[1] The ADEA prohibits employers from "fail[ing] or refus[ing] to hire" an individual "because of [his] age" and protects workers from such discrimination "who are at least 40 years of age." 29 U.S.C. § 631(a), § 623(a). The language "because of" means that a plaintiff must prove that "age was the but-for cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). An ADEA violation may be proven by direct or circumstantial evidence. *McNulty v. Citadel Broad. Co.*, 58 Fed. Appx. 556, 562 (3d Cir. 2003). Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons. *See Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 665 (E.D. Pa. 2019) ("[D]irect evidence is overt or explicit evidence which directly reflects discriminatory bias by a decision maker.") (internal quotation marks and citation omitted). Where the claimant lacks direct evidence of age discrimination, courts apply the *McDonnell Douglas* burden-shifting framework

---

[1] The Third Circuit has held that, "while the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (internal citations omitted). For this reason, claims under the ADEA and the PHRA are treated co-extensively, and the Court will construe both of Plaintiff's claims in light of the case law defining the elements of pleading in an ADEA claim.

under which a claimant must establish a *prima facie* case of discrimination.[2] *Id.* Under this framework, in order to establish a *prima facie* case of discrimination, a Plaintiff must show: (1) that they are at least 40 years old; (2) that they are qualified for the position; (3) have suffered an adverse employment decision; and (4) that they were ultimately replaced by an employee significantly younger to give rise to an inference of age discrimination. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). The final element of the *prima facie* case also may be shown through facts that "are more likely than not based on the consideration of impermissible factors." *Id.* (internal quotation marks and citation omitted).

Regardless of the evidentiary route taken, the burden of proof on a plaintiff asserting an ADEA claim is the same:

> "[I]t is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's "because of" language requires that a plaintiff prove by a preponderance of the evidence. . . that age was the 'but-for' cause of the challenged employer decision."

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). This burden remains squarely with the plaintiff. *Id.* at 177. Under *Gross*, satisfying but-for cause requires plaintiffs to show that age "*had a determinative influence on the outcome*" of the employer's decision-making process. *Gross*, 577 U.S. at 176. So, to defeat summary judgment, Plaintiff must show a genuine dispute of material fact that, if resolved in his favor, could persuade a reasonable juror that age was the but-for cause of his termination.

The only evidence Plaintiff offers of alleged age discrimination is a comment supposedly made to him by nurse DiCecco who had no authority to terminate students, which Plaintiff states

---

[2] The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure the plaintiff [has] his day in court despite the unavailability of direct evidence. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

7

caused him to voluntarily quite the training after a day and a half. Many of the arguments Plaintiff makes surrounding the facts are either contradicted by record or inconsistent. For instance, Plaintiff states that documents he signed to begin Defendant's training program show he was hired when he was accepted into Defendant's program, but the Nurse Aide Training Report he attaches states under "Date of Hire" as "exited."  (ECF No. 26-3 at 23.)  This Court is also left to wonder practically speaking why the Defendant would accept Plaintiff into their program knowing he was seventy-five years old at the time they accepted him, only to terminate him in a discriminatory manner a day and half into the program due to his age. (ECF No. 26-3 at 14) (listing Plaintiff's birthdate on questionnaire.)

Moving passed these inconsistencies and contradictions, and even after drawing all reasonable inferences in Plaintiff's favor, there is insufficient evidence from which a reasonable jury could conclude that age was a "but for" cause of any alleged adverse employment outcome. While this Court held on Defendant's Motion to Dismiss, that nurse DiCecco's remarks could constitute direct evidence of discrimination under the ADEA, the Court was required to accept Plaintiff's allegations as true.  On Defendant's Motion for Summary Judgment, however, nurse DiCecco's allegedly ageist remarks alone are not sufficient to create a triable issue. First of all, Plaintiff's averments regarding nurse DiCecco's allegedly ageist statement, without more, are insufficient to withstand summary judgment as there is no other evidence of discrimination or evidence that nurse DiCecco made these statements other than Plaintiff's own self-serving account.  *Celotex Corp.*, 477 U.S. at 322–23 (the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record); *Abuomar v. Dep't of Corr.*, 754 Fed. Appx. 102, 107 (3d Cir. 2018) ("[S]elf-serving averments alone are insufficient to withstand summary judgment").  But even if Plaintiff's averments alone are

8

sufficient, discovery has revealed that there is simply no evidence that nurse DiCecco was a decisionmaker with any authority to terminate students from the CNA training program and thus, the critical element of causation is lacking. Under the ADEA, stray remarks and statements by non-decisionmakers have little tendency to show that the decisionmaker was motivated by the discriminatory sentiment expressed in the remark and thus, are generally insufficient to establish a claim. *Reed v. V.I. Water Power Authority*, 779 Fed. Appx. 880, 885 (3d Cir. 2019) (holding that summary judgment was proper as stray remarks were insufficient to establish a *prima facie* case of discrimination); *see also Walden v. Georgia-Pacific Corp.*, 126 F. 3d 506, 521 (3d Cir. 1997) (when discriminatory statements by non-decisionmakers were excluded by the lower court, the Third Circuit held that there was no plain error noting they were mere stray remarks); *Gomez v. Allegheny Health Servs., Inc.* 71 F.3d 1079, 1085 (3d Cir. 1995) (stray remarks do not meet the minimum quantity of evidence needed to avoid judgement as a matter of law); *Hunt v. City of Markham, Illinois*, 219 F.3d 649 (7th Cir. 2000) (Judge Posner stating "the fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the *decision* had a discriminatory motivation. That is simple common sense.") The "but for" causation required by *Gross* is also lacking when stray remarks are made by non-decisionmakers that cannot be reasonably imputed to the employer. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F. 4th 293 (2nd Cir. 2021); *see also Comcast Corp. v. Nat'l Ass'n of African American Owned Media*, 140 S. Ct. 1009, 1019 (2000) (noting under *McDonnell Douglas,* only the burden of production, never the burden of persuasion shifts, so a plaintiff must still meet all of the essential elements of their claim); *Gross*, 577 U.S. at 177 ("[U]nder § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action"). Thus, even when a plaintiff

9

cites to offensive remarks, they will not prevail without evidence that the remarks evidenced the decisionmaker's state of mind, or otherwise were causally linked to the challenged employment decision.

No evidence exists showing that nurse DiCecco had decision-making authority, that any of her alleged remarks evidenced a decisionmaker's state of mind or were otherwise causally linked to an adverse employment decision. Defendant states that Robert White was the decisionmaker with authority to terminate students when Plaintiff was enrolled in Defendant's CNA training program and that program instructors, like nurse DiCecco, do not have this authority. Plaintiff, however, argues that Defendant's student guidelines indicate that nurse DiCecco had authority to terminate Plaintiff from Defendant's training program. Plaintiff bases this argument on a reference in Defendant's student guidelines to the term "Program Coordinator" that does not appear next to any provision dealing with authority to terminate or retain students; instead, only the word "Coordinator" is referenced in these guidelines as having "the final decision on retention or termination of a student."  (ECF No. 24-1 at 36.). Plaintiff maintains that since the word "Program Coordinator" appears elsewhere in the student guidelines, that the word "Coordinator" must actually mean "Program Coordinator." Therefore, according to Plaintiff "Program Coordinators" have authority to terminate students from Defendant's training program, and since Robert White is referred to in documents as a "Title 9 Coordinator," he cannot possibly also be the "Program Coordinator." In other words, these two titles, according to Plaintiff, are mutually exclusive with only the "Program Coordinator" having authority to terminate students. No such evidence exists to support this conclusory argument.

But even if this Court were to accept this contention, the mere fact that Mr. White might be a "Title 9 Coordinator" does not magically turn nurse DiCecco, one of Defendant's CNA

instructors, into the "Program Coordinator" when there is zero evidence that she is. Plaintiff also argues that nurse DiCecco's role in collecting exit forms also somehow confers the authority to terminate students from Defendant's program, but this Court is hard pressed to see how an administrative task somehow gives decision-making authority. In sum, Plaintiff offers no relevant arguments except to assert in a conclusory manner that there is "no evidence that Ms. DiCecco did not have any decision-making authority."  The absence of evidence is not evidence. And it also does not create a disputed issue of material fact for the jury to decide from. Fatal to Plaintiff's argument is that Defendant does bring forth evidence that nurse DiCecco was never a "Program Coordinator," to which Plaintiff counters with nothing other than to reiterate nurse DiCecco's alleged discriminatory conduct.  (ECF No. 29-1 at 25 (Declaration of Carol Dougherty.)

Though the parties have not discussed the alternative, subordinate theory of liability, where a defendant can be liable for actions of a non-decisionmaker, Plaintiff cannot rely on this basis of liability. Under this theory, known as the "cat's paw" doctrine,[3] a defendant may be liable under the ADEA when a biased employee, who lacks decision-making power, persuades the unbiased decisionmaker to take adverse action against a plaintiff.  The Third Circuit has endorsed the "cat's paw" doctrine requiring that where the plaintiff seeks to hold an employer liable for the improper motives of a non-decisionmaker, there must be a causal relationship

---

[3] The term, "cat's paw" derives from a fable of a monkey who employs flattery to convince a cat to pull chestnuts out of a fire. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 n.1 (2011). "Today the term 'cat's-paw' refers to 'one used by another to accomplish his purposes.' ... In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006).

between the subordinate's action and the employment decision. *McKenna v. City of Philadelphia*, 649 F. 3d 171 (3d Cir. 2011).

No such causal relationship exists here. Rather, the decision to quit the Defendant's training program was Plaintiff's alone. Plaintiff argues that the decision to quit was not a decision at all because nurse DiCecco's ageist remarks were so intolerable that he was "constructively discharged." *See Lempa v. Rohm & Haas Co.*, 2009 U.S. Dist. LEXIS 121717, No. 05-985 at *39-40 (E.D. Pa. Dec. 29, 2009) (While a Plaintiff may show constructive discharge created by an intolerable environment, the Third Circuit has emphasized that the standard for establishing constructive discharge is a very demanding one). Even if this Court accepted Plaintiff's argument that he was essentially forced into quitting Defendant's training program based on ageist remarks by nurse DiCecco and that those remarks were so intolerable so as to cause constructive discharge, Plaintiff did not lodge any complaint with any decisionmaker for Defendant. There is no evidence of any decisionmaker of Defendant being influenced or the source of nurse DiCecco's comments. Nor is there any evidence that any decisionmaker was aware of the allegedly ageist comments until this litigation ensued. Rather, Plaintiff quit the program after a day and half of instruction and appears to have not complained to anyone at Fair Acres Geriatric Center. In these circumstances, nurse DiCecco's allegedly ageist statements do not support a causal connection. Thus, no reasonable factfinder could conclude—based on this evidence—that Plaintiff suffered discrimination in Defendant's failure to hire him because of his age.

For the same reasons that Plaintiff cannot sustain claims under the ADEA, he too cannot sustain claims under the PHRA. *See Minetola v. Commonwealth Tel. Co.*, 298 Fed. Appx. 177, 180 n.5 (3d Cir. 2008) (holding that "[t]he same legal standard applies to both the ADEA and the

PHRA and therefore it is proper to address them collectively"); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 566 n.1 (3d Cir. 2005) (same). Accordingly, since causation is lacking, summary judgment is warranted on Plaintiff's claims under the ADEA and PHRA.

## CONCLUSION

For the reasons discussed above, the Court will grant Defendant's Motion for Summary Judgment. An appropriate Order will follow.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ Judge John Milton Younge

**Judge John Milton Younge**